UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. 06-1004 (MLC) |
|  | : |  |
| Petitioner, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| STEVEN TRENK, | : |  |
|  | : |  |
| Respondent. | : |  |

Petitioner, the United States of America ("United States"),
seeks to enforce a summons issued under 26 U.S.C. § ("Section")
7604.  Respondent, Steven Trenk, opposes enforcement, and asserts
counterclaims against the United States.  The United States moves
to dismiss the counterclaims for lack of jurisdiction.  Trenk
cross-moves to (1) join the Internal Revenue Service ("IRS") as a
party, and (2) enter summary judgment in his favor as to the
counterclaims.  The Court will (1) enforce the summons, (2) grant
the motion to dismiss, and (3) deny the cross motion.

## BACKGROUND

Trenk is the president of Gold Crown Insurance Inc. ("GCI"),
which is organized under the laws of the British Virgin Islands.
(Trenk Stmt. of Facts, at 2.)  GCI is the corporate successor to
TechTron Holding, Inc. ("TTH"), (1) which was a Delaware
corporation operating in New Jersey, and (2) of which Trenk also
was president.  (Id.; Pet., at 2.)  The IRS is examining TTH's
tax liability for the tax year ending December 31, 2000.  (U.S.
Pet. Br., at 1.)  It is investigating a possible tax avoidance

scheme surrounding TTH's receipt of a $5.2 million settlement award.  (Id. at 2.)  IRS agent Richard Schloemer is assigned to the TTH investigation.  (Pet. at, 2.)

The IRS issued a summons to Trenk, as GCI's president, on August 26, 2005, in connection with the TTH investigation.  (Id. at 4.)  It directed Trenk to appear on September 10, 2005, to "giv[e] testimony and produc[e] for examination books, papers, records, or other data described in the summons."  (Id.)  The appearance date was changed to October 10, 2005, as September 10 was a Saturday.  (Id.)  The IRS asserts that the summons requests fifty-two categories of documents that are relevant to the TTH investigation.  (Id.)

The IRS contends that Trenk has refused to comply with the summons.  (Id.)  The United States thus petitioned to enforce the summons.  (Dkt. entry no. 1.)  The Court ordered Trenk to show cause why the summons should not be enforced.  (Dkt. entry nos. 2, 4.)  Trenk opposed the enforcement of the summons and asserted five counterclaims against the United States.  The counterclaims seek the production of documents pursuant to the Freedom of Information Act ("FOIA"), the Privacy Act, and various provisions of the Internal Revenue Code.  (See Answer.)

The United States moves to dismiss the counterclaims for lack of jurisdiction.  (Dkt. entry no. 12.)  Trenk opposes, and cross-moves (1) to add the IRS as a party, and (2) for the entry of

summary judgment in his favor as to the counterclaims.  (Dkt. entry no. 17.)  The Court heard oral argument on the petition, motion, and cross motion.

## DISCUSSION

## I.  Petition to Enforce Summons

The United States argues that the summons should be enforced because (1) it has made a prima facie case for enforcement, and (2) Trenk has not met his burden to establish affirmative defenses to enforcement.  (U.S. Pet. Br., at 7-9; U.S. Reply, at 5-21.) In opposition, Trenk argues that (1) he has fully complied with the summons, (2) the summons was not issued in good faith, (3) the testimony requested is privileged or barred by the Fifth Amendment, and (4) the summons was not issued pursuant to proper procedure.  (Trenk Pet. Br., at 2, 3, 8, 12, 16.)

### A.  Applicable Legal Standard

The Secretary of the Treasury or the Secretary's delegate may summon a taxpayer to appear before the Secretary to produce documents and give testimony to enable the IRS to determine tax liability.  26 U.S.C. § 7602(a)(2).  If a taxpayer fails or refuses to comply with the summons, "the United States district court for the district in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."  26 U.S.C. § 7604(a).

3

The United States, to establish a prima facie case in favor of enforcement of a summons, must show that (1) the investigation is being conducted by the IRS for a legitimate purpose, (2) the inquiry is relevant to the purpose, (3) the information sought is not already in the IRS's possession, and (4) the administrative steps required by the tax code have been followed.  United States v. Powell, 379 U.S. 48, 57-58 (1964); see United States v. Rockwell Int'l, 897 F.2d 1255, 1262 (3d Cir. 1990).  "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement."  United States v. Garden State Nat'l Bank, 607 F.2d 61, 68 (3d Cir. 1979); see United States v. Lawn Bldrs. of New Eng., 856 F.2d 388, 392 (1st Cir. 1988) (stating same).  Even if the United States shows the elements of a prima facie case, a taxpayer nevertheless may challenge the summons on "any appropriate ground."  Powell, 379 U.S. at 58; see Rockwell, 897 F.2d at 1262.  An appropriate ground exists when the taxpayer disproves one of the four Powell elements, or demonstrates that enforcement of the summons will result in an abuse of process.  Rockwell, 897 F.2d at 1262.  An abuse of process occurs when the IRS "abandons in an institutional sense . . . the pursuit of civil tax determination or collection."  Garden State, 607 F.2d at 68 (internal quotes and cites omitted).

The burden to show an abuse of process is on the taxpayer. Powell, 379 U.S. at 58.  The burden is a heavy one.  Garden State,

607 F.2d at 68.  A summons is issued for a legitimate purpose when it is issued in good faith pursuant to one of the powers granted under Section 7602.  Rockwell, 897 F.2d at 1262.  The United States need not delineate a specific and narrow purpose for the summons.  Id. at 1263.  If a case has not yet been submitted to the Justice Department for criminal prosecution, a summons is presumptively valid.  Garden State, 607 F.2d at 67.  The taxpayer must factually oppose the summons by affidavit; legal conclusions and memoranda of law are not sufficient.  Id. at 71.  When the taxpayer does not refute the prima facie case or cannot factually support an affirmative defense, the Court should enforce the summons without an evidentiary hearing.  Id.

**B.   United States Has Met Powell Burden**

A declaration filed by Schloemer, who is assigned to the IRS's examination of federal income tax liabilities of TTH and its subsidiaries, satisfies the Powell burden.  (Schloemer Decl., at 1.)  Schloemer declares that (1) the examination will determine TTH's correct federal income tax liability for the taxable year ending December 31, 2000, (2) "the internal revenue summons seeks relevant information which may shed light on the taxpayer's correct tax liability for the tax year ending December 31, 2000," (3) "the corporate books, papers, records, data, and testimony sought by the summons are not already in the possession of the [IRS]," and (4) "all administrative procedural steps" required by

5

the Internal Revenue Code have been followed.  (<u>Id.</u> at 2-4.)[1]
Schloemer also states that (1) "no 'Justice Department referral'
is in effect with respect to the taxpayer," (2) the IRS has made
no recommendation to the Department of Justice for a grand jury
investigation or criminal prosecution of the taxpayer, and (3)
the Justice Department has not requested the disclosure of any
return or return information.  (<u>Id.</u> at 2.)  Schloemer's
declaration addresses and satisfies the <u>Powell</u> elements.  The
United States, therefore, has established a prima facie case for
enforcement of the summons.

### C.   Trenk's Objections

Trenk asserts five "defenses" in opposition to enforcement.
He states that either he has complied with the summons, or the
summons should not be enforced because (1) it was improperly
served, (2) he does not possess any of the documents requested in
the summons, and the documents he does have are privileged, (3)
the IRS already has the documents it requested, (4) the summons
seeks to compel testimony in violation of Trenk's Fifth Amendment
privilege against self-incrimination, and (5) the summons was
issued for an improper purpose and not in good faith.  (Answer,
at 5; Trenk Decl., at 2-5.)

---

[1]  Schloemer acknowledges that the IRS possesses the documents
listed in exhibit B of his declaration.  (Schloemer Decl., at 4.)
Those documents were produced by Trenk's attorney in response to
the summons.  (Id., at Ex. B.)  The United States seeks to
enforce the summons except for the documents listed in exhibit B.

The Court determines that these defenses do not refute the prima facie showing of the _Powell_ elements.  Trenk, therefore, has not met his burden, and the summons will be enforced.

### 1.   Service of Summons

Trenk argues that the summons was not properly served because it was (1) returnable on a Saturday, a non-business day, in violation of the relevant sections of the Internal Revenue Code and accompanying regulations, and (2) not personally served upon Trenk, but instead a copy was left at his "last and usual abode," contrary to the procedure outlined in the Internal Revenue Manual.  (Trenk Pet. Br., at 13-14.)

The Internal Revenue Code provides that a summons issued under Section 7602 must be "delivered in hand to the person to whom it is directed, or left at his last and usual place of abode." 26 U.S.C. § 7603.  The Court recognizes that a corporation does not have a "place of abode," but the summons was (1) left at Trenk's "last and usual place of abode," and (2) directed to him in his corporate capacity.  (Pet., at 4.)  The procedural deficiencies cited by Trenk, therefore, do not prevent enforcement of the summons.

The IRS must seek enforcement of a summons, as it is not self-enforcing, from a district court.  _United States v. Gilleran_, 992 F.2d 232, 233 (9th Cir. 1993).  To obtain enforcement, the petitioner must satisfy the _Powell_ elements, and the Court must

issue an order to show cause to acquire jurisdiction over the
summoned party.  Id.  Service of the order to show cause must
comply with Federal Rule of Civil Procedure 4.  Id.  "Thus the
proper manner to test the enforceability of the IRS summons is
through an adversary proceeding initiated by the service of
process."  United States v. Bichara, 826 F.2d 1037, 1039 (11th
Cir. 1987); see United States v. Privitera, No. 93-55941, 1995 WL
57176, at *1 (9th Cir. Feb. 6, 1995) (determining technical
compliance with Section 7603 not necessary, and IRS need only
establish substantial compliance with requirements).

     The Court issued an order to show cause that was served upon
Trenk here.  (See dkt. entry no. 5.)  Trenk responded to the
petition, and asserted defenses and counterclaims.  His counsel
argued on his behalf before the Court during oral argument on the
petition and pending motion and cross motion.  The alleged
procedural deficiencies of the summons, therefore, do not
preclude the enforcement of the summons.

### 2.   Possession of Documents and Privilege

     Trenk argues that (1) he has already provided the IRS with
sixteen boxes of documents that are responsive to the summons, (2)
the documents that he has not provided to the IRS are privileged
and possessed by his attorney, and (3) he is not in possession,
custody, or control of any documents that are responsive to the
summons.  (Trenk Decl., at 3; Trenk Pet. Br., at 7.)

8

"A lack of possession and control of summoned documents is a 'valid defense' to an IRS application for an enforcement order." United States v. Huckaby, 776 F.2d 564, 567 (5th Cir. 1985). Trenk bears the burden of producing credible evidence that he does not possess or control the documents sought. See Lawn Bldrs., 856 F.2d at 392. He cannot merely state that he lacks possession. Huckaby, 776 F.2d at 567 (noting Huckaby had burden of "producing relevant and reliable evidence that he was not in possession or control of the summoned documents in order to sustain his affirmative defense to enforcement of the summons," and did not meet burden by merely stating he did not possess them). It is not the burden of the IRS to prove by positive evidence the existence of the documents sought, and their possession by Trenk. Lawn Bldrs., 856 F.2d at 392; see United States v. Wheaton, 791 F.Supp. 103, 105 (D.N.J. 1992) (stating party resisting enforcement of summons bears burden of producing credible evidence that he does not possess or control documents sought).

Trenk states — without more — that he does not possess the documents requested by the summons. (Trenk Decl., at 3; Trenk Pet. Br., at 7; Tr., at 28-30.) But he has not produced evidence to carry his burden on this defense. The IRS is seeking documents that are of the type that a corporation would routinely produce. See Lawn Bldrs., 856 F.2d at 392. Trenk, as GCI's president, is presumed to have access to such documents. See id. at 394

9

(finding it proper to presume president and corporate officer is custodian of corporate records).  Trenk's statement that he does not possess the documents, without more, does not negate the United States's prima facie showing of the <u>Powell</u> elements.

Trenk asserts that four of the requested documents have not been provided to the IRS because they are protected by the attorney-client privilege.  (Tr., at 27.)  The Court recognizes that the IRS summons power is "not absolute and is limited by the traditional privileges, including the attorney-client privilege." <u>Id.</u>  But claims of attorney-client privilege must be asserted document-by-document, rather than by a single, blanket assertion. <u>Rockwell</u>, 897 F.2d at 1265.  It is Trenk's burden to prove that the requested documents are privileged.  <u>Id.</u> at 1264.  Trenk has neither (1) raised the privilege on a document-by-document basis, nor (2) stated why such documents are subject to the privilege. The Court, therefore, will not prevent the enforcement of the summons based on the blanket assertion that four of the documents are privileged.  Trenk, however, can assert the privilege on a document-by-document basis.  The Court will conduct an in camera review of those documents, and hear ex parte why those documents should not be produced.

### 3.   The IRS Has the Documents

Trenk asserts that the IRS received (1) sixteen boxes of documents that are responsive to the summons before it was

10

issued, and (2) documents that are responsive to the summons from a separate examination of Arthur Andersen, TTH's accountant. (Trenk Pet. Br., at 4; Trenk Decl., at 3.)  Trenk argues that any further inspection of the records would be a violation of Section 7605.  (Tr., at 29-31.)

The IRS, through Schloemer's declaration, has stated that it (1) has excluded from the summons documents that are already in its possession, and (2) does not have in its possession any of the documents requested by the summons.  (Schloemer Decl., at 4.) Such a declaration is sufficient to demonstrate a prima facie case for enforcement under Powell.  Trenk must demonstrate that the IRS's declaration is incorrect.  The Court determines that Trenk has not met this burden.

No taxpayer may be subjected to unnecessary examinations or investigations.  26 U.S.C. § 7605.  The "already possessed defense" is derived from Powell, not Section 7605.  Considering Powell and Section 7605 together, the Court determines that Powell safeguards against the enforcement of unnecessary summonses, but does not act as an absolute prohibition to the enforcement of a summons if the summons seeks documents that are already in the possession of the IRS.  See United States v. Davis, 636 F.2d 1028, 1037 (5th Cir. 1981).

The IRS's requests here do not offend Powell or Section 7605. First, as to the sixteen boxes of documents already turned over,

11

the IRS acknowledges that the sixteen boxes were produced, and that it does not seek them in this summons.  (Schloemer Decl., at 4, Ex. B; Tr., at 36.)  Trenk also cannot resist the summons by asserting that the IRS has received the relevant documents from Arthur Andersen.  Trenk acknowledges that (1) he believes that the IRS has the Arthur Andersen files related to TTH, but (2) the IRS has not revealed what documents it received from Arthur Andersen.  (Trenk Decl., at 4.)  Schloemer states that "the Service has obtained some documents from a separate examination of Arthur Andersen, Inc. ("AA").  Nonetheless, the Service wants to examine respondent's copies of documents it received from AA."  (Schloemer Decl., at 4.)  While the IRS may have received some of the documents requested in the summons from Arthur Andersen, seeking production of the same documents from TTH through Trenk does not constitute an unnecessary examination of the documents.

Trenk asserts that the documents are the same as those provided by Arthur Andersen.  But the IRS points out that the documents possessed by a taxpayer may (1) be a different version than those held by an accountant, (2) contain alterations, or (3) have unique notations on them.  (Tr., at 13.)  In this sense, the documents requested by the summons are not already possessed by the IRS.  See United States v. Daffin, 653 F.2d 121, 124 (4th Cir. 1981) ("Given the possibility that a taxpayer may alter a return after it is prepared by his accountant, the district court could

properly conclude that the information sought was not already in the possession of the IRS"). But see United States v. Pritchard, 438 F.2d 969, 971 (5th Cir. 1971) (determining information sought was already possessed by IRS, as IRS agent undertook investigation that lasted several weeks, and he and an accountant looked at all copies of taxpayer's papers for three to four hours). Further inquiry and discovery into the contents and identification of the documents submitted by Arthur Andersen would delay the IRS investigation. Permitting such a delay is inconsistent with the summary nature of petitions for enforcement. Davis, 636 F.2d at 1038 ("It is inconsistent with the scheme of summary enforcement to permit a person summoned to delay the process . . . when it is probable that the person summoned has no substantial interest in anything but the delay itself"). Trenk's assertion, therefore, that the IRS already possesses the documents requested by the summons does not prevent the enforcement of the summons.

### 4. Fifth Amendment

Trenk argues that the summons seeks to compel him to give testimony in violation of his Fifth Amendment privilege against self-incrimination. (Answer, at 5; Trenk Decl., at 4-5; Trenk Pet. Br., at 12.) The Fifth Amendment "protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." Bellis v. United States, 417 U.S. 85, 87 (1974). A corporation has no Fifth Amendment privilege.

13

Braswell v. United States, 487 U.S. 99, 105 (1988).  Corporations, as artificial entities, may only act through their agents.  In re Grand Jury Empaneled on April 6, 1993, 869 F.Supp. 298, 301 (D.N.J. 1994).  A corporate custodian is obligated to produce corporate documents on proper demand by the government.  Id.; see Braswell, 487 U.S. at 108-09 (noting corporate custodian may not resist subpoena for corporate records on Fifth Amendment grounds).  The production of corporate documents is not a personal act by the custodian thereof; it is an act of the corporation.  United States v. Raniere, 895 F.Supp. 699, 707 (D.N.J. 1995).  To allow the custodian to assert a Fifth Amendment privilege as to the production of corporate documents "would be tantamount to a claim of privilege by the corporation - which of course possesses no such privilege."  Id. (internal quotes omitted).

"A custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is a custodian."  Curcio v. United States, 354 U.S. 118, 123-24 (1957).  An individual "cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally."  Bellis, 417 U.S. at 88.  A custodian also must identify or authenticate by oral testimony the documents produced in response to the subpoena.  In re Grand Jury, 869 F.Supp. at 301.  "Requiring [a] custodian to identify or

authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself." Id. at 302. But the individual "cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony." Curcio, 354 U.S. at 124. "[F]orcing [a] custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind.  He might be compelled to convict himself out of his own mouth.  That is contrary to the spirit and letter of the Fifth Amendment." Id. at 128.  "Compelled oral testimony that is not implicit in or auxiliary to the production of the documents and that may entail further independent incrimination will violate the Fifth Amendment."  In re Grand Jury, 869 F.Supp. at 302.

But a blanket or general assertion of the Fifth Amendment privilege to resist enforcement of a summons is insufficient as a matter of law. Raniere, 895 F.Supp. at 704; see United States v. Allee, 888 F.2d 208, 212 (1st Cir. 1989) ("blanket objection to the issuance of an IRS summons based on the Fifth Amendment privilege against self-incrimination is not a viable defense" (emphasis in original)); United States v. Allshouse, 622 F.2d 53, 56 (3d Cir. 1980).  The privilege must be asserted as to individual requests. Raniere, 895 F.Supp. at 704.  "The recipient of a summons properly must appear before the IRS agent and claim the privilege on a question-by-question and document-by-document

15

basis." <u>Allee</u>, 888 F.2d at 212 (noting some documents and questions relevant to IRS summons to which privilege would not apply); <u>see</u> <u>Davis</u>, 636 F.2d at 1038.  A court "simply cannot make a determination as to the legitimacy of the interposition of the Fifth Amendment privilege, with respect to particular questions and documents, in advance." <u>Allee</u>, 888 F.2d at 212.

The summons here requests that Trenk — in his corporate capacity as TTH president, not as an individual — appear to testify and produce documents on behalf of TTH.  (Tr., at 8.)  TTH does not enjoy a Fifth Amendment privilege.  Trenk, therefore, cannot assert such a privilege on TTH's behalf.  The summons itself does not specify the nature of the testimony that the IRS will seek from Trenk except to state that Trenk is summoned "to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data." (Summons.)  He argues that the summons seeks to compel him to give testimony beyond the authentication and identification of documents.  (Trenk Pet. Br., at 9.)  Specifically, he argues that the summons instructions compel him to disclose the whereabouts of documents not in his possession.  (<u>Id.</u> at 10.)

Trenk can assert the Fifth Amendment privilege against self-incrimination if the summons requires him to "disclose the contents of his own mind," or to make statements beyond what is implicit in production of the documents.  <u>Curcio</u>, 354 U.S. at

16

128.  Here, however, Trenk has made a blanket assertion of the Fifth Amendment.  To properly invoke it, he must appear before the IRS and assert the privilege on a question-by-question and document-by-document basis.  The defense of self-incrimination, therefore, is not sufficient to deny enforcement of the petition.

### 5.   Improper Purpose

Trenk argues that the summons was not issued in good faith, and enforcement of the summons would be an abuse of process. (Trenk Pet. Br., at 3, 6; Answer, at 5.)  A summons is issued in bad faith when the IRS abandons its institutional pursuit of "civil tax determination and collection."  Garden State, 607 F.2d at 68.  "[T]he good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice."  Id.; see United States v. LaSalle Nat'l Bank, 437 U.S. 298, 316-17 (1978).

Schloemer's declaration indicates that no recommendation for prosecution has been made to the Department of Justice and that the Department of Justice has not requested any information on a tax return.  (Schloemer Decl., at 2.)  The IRS, therefore, has satisfied its burden to demonstrate that it has not abandoned its institutional purpose.

Trenk points to a memorandum from Candy Semanski, an IRS agent, as evidence that the IRS has abandoned its institutional purpose.  (Tr., at 62.)  He argues that the memorandum indicates

17

that the IRS has decided to impose tax liability on TTH regardless of what documents TTH provides.  (Id. at 62-63.)  Such evidence, however, is not sufficient to demonstrate bad faith on the part of the IRS because the intent of a single agent cannot be imputed to the IRS as a whole.  See Garden State, 607 F.2d at 69, 71 (noting claims "supporting a 'bad faith' defense are . . . insufficient if conclusionary.  The affidavit must particularize those specific facts from which an inference may be drawn that the conduct of the [IRS] was [in bad faith]").  Thus, the Court will not deny enforcement of the summons based on a defense of improper purpose.

## II.  Motion and Cross Motion

Trenk's counterclaims asserted against the United States seek production of documents pursuant to (1) the FOIA, (2) the Privacy Act, and (3) Sections 6103, 6203, and 7602(c) of the Internal Revenue Code.  The United States moves to dismiss the counterclaims because (1) it has not waived its sovereign immunity, (2) counterclaims are not permitted in a summons enforcement proceeding, and (3) Trenk cannot prosecute claims on behalf of GCI and TTH.  (U.S. Mot. Br., at 2, 4, 5.)  Trenk argues that (1) the IRS should be added as a party, (2) counterclaims may be asserted in summons enforcement proceedings, and (3) Trenk may prosecute the claims because his name appears on the power of attorney forms submitted with the document requests.  (Trenk Br., at 1, 6, 21.)

18

Trenk cross-moves to add the IRS as a party, and for entry of summary judgment in his favor as to the counterclaims.  He argues that the IRS should be added as a party because the IRS is (1) needed to grant complete relief as to the counterclaims, and (2) the real party in interest.  (Id. at 2-3.)  He argues that he is entitled to summary judgment because (1) the documents were properly requested, (2) the government's time to provide the documents has expired, and (3) the government has not provided them.  (Id. at 26-27.)  The United States argues that (1) the cross motion is procedurally improper, (2) joinder of the IRS is inappropriate, (3) sovereign immunity bars the counterclaims, and (4) Trenk does not have standing to prosecute the counterclaims. (U.S. Reply Br., at 2, 4, 11.)

### A.    FOIA and Privacy Act Claims

The FOIA provides the district court with jurisdiction to enjoin an "agency from withholding agency records, and to order the production of any agency records."  5 U.S.C. § 552(a)(4)(B). An agency "means any authority of the Government of the United States, whether or not it is within or subject to review by another agency."  5 U.S.C. § 551(1).  The United States is not a proper party in a FOIA action.  Huertas v. United States, No. 04-3361, 2005 WL 1719143, at *7 (D.N.J. July 21, 2005) (granting summary judgment to United States because only proper party to action for withheld information is an agency); Maginn v. United

19

States, No. 92-313, 1995 WL 355241, at *4 (W.D. Pa. May 29, 1992) (dismissing complaint because "United States is not a proper party in a FOIA suit"); see Petrus v. Bowen, 833 F.2d 581, 582 (5th Cir. 1987) (noting FOIA and Privacy Act authorize actions against agencies, not agency employees).

Trenk's counterclaims are asserted against the United States.  The United States, however, is not a proper party against which a FOIA or Privacy Act claim can be asserted.  The Court, therefore, will dismiss Trenk's counterclaims seeking the production of documents based on the FOIA and the Privacy Act.[2]

**B.   Proper Plaintiff to Assert FOIA or Privacy Act Claim**

The FOIA permits a district court to order the production of documents improperly withheld from the complainant.  5 U.S.C. § 552(a)(4)(B) (emphasis added); see 26 C.F.R. § 601.702(c) ("IRS shall . . . make reasonably described records available to a person making a request for such records").  Thus, any person submitting a FOIA request has standing to bring a FOIA challenge if it is not fulfilled.  McDonnell v. United States, 4 F.3d 1227, 1238 (3d Cir. 1993); Mahtesian v. U.S. Off. of Personnel Mgmt., 388 F.Supp.2d 1047, 1048 (N.D. Cal. 2005).  However, "[a] person whose name does not appear on a request for records has not made a formal request for documents within the meaning of the statute.  Such a

---

[2] The Court will address the counterclaims asserted pursuant to the Internal Revenue Code, infra.  See DISCUSSION II.B.

person, regardless of his or her personal interest in disclosure
of the requested documents, has no right to receive [the]
documents." McDonnell, 4 F.3d at 1237-38.  Similarly, the
Privacy Act permits "an individual to gain access to his record."
5 U.S.C. § 552a(d)(1).

      An attorney can submit a request on behalf of a client, but
must do so "on the express behalf of a clearly identified client"
in order for the client to have standing to bring a FOIA action
if the request is denied.  Mahtesian, 388 F.Supp.2d at 1048
(emphasis in original); see Three Forks Ranch Corp. v. Bur. of
Land Mgmt., 358 F.Supp.2d 1, 3 (D.D.C. 2005); Brown v. U.S. Envtl.
Prot. Agency, 384 F.Supp.2d 271, 276 (D.D.C. 2005) (determining
plaintiff had standing because her attorney's FOIA request stated
that he was making request on behalf of plaintiff, and identified
plaintiff by name).  An attorney may file a request on behalf of a
corporation because a corporate entity is unable to sign anything
itself.  Three Forks, 358 F.Supp.2d at 1.  However, "a person . . .
whose name does not appear on a FOIA request for records may not
sue in district court when the agency refuses to release the
requested documents because he has not administratively asserted
a right to receive them in the first place."  McDonnell, 4 F.3d
at 1238 (holding only individual whose name appeared on document
requests, and who pursued administrative appeals of agency's
decision to withhold records has standing to challenge agency's

action); see Lamb v. IRS, 871 F.Supp. 301, 303 (E.D. Mich. 1994) (dismissing claim by plaintiff who did not sign FOIA request).

The Court determines that Trenk lacks standing to assert the counterclaims.  The document requests were made and signed by Frank Agostino, GCI's attorney.  The letters submitted to the IRS by Agostino state "[w]e represent Gold Crown Insurance Ltd. (hereinafter the 'Taxpayer') (see attached IRS Forms 2848)." (Agostino Decl., at Ex. 1.)  Form 2848 is a power of attorney form signed by Trenk as president of GCI.  (Id.)  The Court recognizes that Agostino (1) as GCI's attorney, may submit document requests on GCI's behalf, and (2) identifies his client by name in the requests.  The client identified, however, is GCI, not Trenk. GCI, the taxpayer, has standing to challenge the IRS's failure to provide the requested documents.  Trenk himself does not have standing to bring an action.  His name does not appear on the document requests, and he is not the client for which the requests were made.  Trenk did sign the power of attorney form that was attached to the document requests, but such a signature is not sufficient to confer standing upon him to assert the counterclaims here.  His signature was, and the documents requests were made, on behalf of GCI.  He may have a personal interest in the disclosure of the documents, but — as recognized in McDonnell — a person whose name does not appear on a document

request does not have standing to challenge the IRS's failure to provide the documents.[3]

The Court, therefore, will grant the motion to dismiss the counterclaims because (1) the United States is not a proper defendant, and (2) Trenk is not a proper plaintiff.  The addition of the IRS as a party would not cure both of these defects.  The part of the cross motion seeking to join the IRS as a party, therefore, will be denied.  The part of the cross motion for the entry of summary judgment in Trenk's favor as to the counterclaims will be denied as moot.

## CONCLUSION

The Court will (1) grant the petition to enforce the summons, (2) grant the motion, and (3) deny the cross motion.  The Court will issue an appropriate order and judgment.


                                    s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge


---

[3]    Three of the counterclaims seek production of documents pursuant to Sections 6103, 6203, and 7602 of the Internal Revenue Code, respectively.  The IRS must keep taxpayer returns confidential.  26 U.S.C. § 6103.  The IRS must provide a copy of the record of an assessment to the taxpayer if one is requested. 26 U.S.C. § 6203.  Section 7602 relates to when the IRS may contact third parties as to the determination of tax liability. 26 U.S.C. § 7602.  Sections 6103 and 7602 do not provide for a private cause of action against the United States.  Therefore, those counterclaims will be dismissed.  No assessment has been made pursuant to Section 6203, and thus the claim brought pursuant to it will be also be dismissed.