**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. 06-1004 (MLC) |
|  | : |  |
|     Petitioner, | : | **MEMORANDUM OPINION** |
|  | : |  |
|     v. | : |  |
|  | : |  |
| STEVEN TRENK, | : |  |
|  | : |  |
|     Respondent. | : |  |
|  | : |  |

**COOPER, District Judge**

    Petitioner, the United States of America ("United States"),
seeks to enforce a summons issued under 26 U.S.C. § ("Section")
7604.  (Dkt. entry no. 1, Pet.)  Respondent, Steven Trenk
("Trenk"), opposes enforcement of the summons, asserting that he
has fully complied with the summons and the withheld documents
are protected by privilege.  (Dkt. entry no. 9, Trenk Br. at 1.)
The Court held an evidentiary hearing on March 27, 2007, and
April 23, 2007.  (See dkt. entry no. 55; dkt. entry no. 57.)  The
Court also reviewed in camera the documents Trenk withheld
pursuant to his claims of privilege.  For the reasons stated
herein, the Court will (1) grant the petition to enforce the
summons to the extent it seeks production of the withheld
documents, (2) deny the petition to enforce the summons to the
extent it seeks production of any other documents, and (3) order
production of the withheld documents.

BACKGROUND[1]

The Internal Revenue Service ("IRS") issued a summons to Trenk, as the president of Gold Crown Insurance Ltd. ("Gold Crown"), in connection with the TechTron Holding, Inc. ("TTH") investigation pursuant to Section 7602. (Pet. at ¶ 12.) The summons lists fifty-two categories of documents and explains that such documents "generally pertain to the transactions that generated a deduction in the tax year 2000 in the amount of $5,200,000 related to a purported contested liability under [Internal Revenue Code] § 461(f)." (Dkt. entry no. 1, Decl. Richard Schloemer, Ex. A, Summons at 3.) The IRS asserts that, with the exception of certain documents set forth on an exhibit, it does not possess the requested documents, and contends that Trenk refused to comply with the summons. (Pet. at ¶¶ 16-17.)

The United States petitioned this Court, inter alia, to (1) direct Trenk to show cause why he should not comply with the summons, and (2) require Trenk to appear and testify before the IRS and to produce books, papers, records, and other documents in compliance with the summons. (Id. at ¶¶ A, C.) Trenk asserted that he fully complied with the summons and withheld four documents, claiming they were protected by privilege. (Trenk Br.

---

[1] See the Court's memorandum opinions of November 20, 2006 and January 22, 2007 for a more detailed background to the action. (Dkt. entry no. 28, 11-20-06 Mem. Op.; dkt. entry no. 47, 1-22-07 Mem. Op.)

at 1-3; 16-20.)  The Court heard oral argument on August 17, 2006.  (Dkt. entry no. 26.)  Thereafter, the Court, inter alia, (1) granted the petition, (2) directed Trenk to comply with the summons with the exception of the four allegedly privileged documents, and (3) directed Trenk to set up in camera review of the four allegedly privileged documents.  (Dkt. entry no. 29, 11-20-06 Order.)  Trenk moved for partial reconsideration of the 11-20-06 Order.  (Dkt. entry no. 30, Mot. for Recons.)  The Court (1) granted the motion for partial reconsideration, (2) vacated the part of the 11-20-06 Order granting the United States's request to enforce the summons and directing Trenk to comply with the summons, and (3) directed the parties to schedule an evidentiary hearing.  (Dkt. entry no. 48, 1-22-07 Order.)  An evidentiary hearing was held on March 27, 2007, and April 23, 2007.  (Dkt. entry no. 55; dkt. entry no. 57.)  Between hearing dates, Trenk produced additional documents to the IRS in compliance with the summons, and withheld seven additional documents as allegedly protected by privilege.

## DISCUSSION

### I.  Applicable Legal Standards

#### A.  Legal Standards Governing Enforcement of an IRS Summons

The Secretary of the Treasury or the Secretary's delegate may summon a taxpayer to appear before the Secretary to produce documents and give testimony to enable the IRS to determine tax

3

liability.  26 U.S.C. § 7602(a)(2).  If a taxpayer fails or refuses to comply with the summons, "the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."  Id. § 7604(a).

The United States, to establish a prima facie case in favor of enforcement of an IRS summons, must show that (1) the investigation is being conducted for a legitimate purpose, (2) the inquiry is relevant to such purpose, (3) the information sought is not already in the IRS's possession, and (4) the administrative steps required by the tax code have been followed, including that the IRS has notified the taxpayer in writing that further examination is necessary.  United States v. Powell, 379 U.S. 48, 57-58 (1964); United States v. Rockwell Int'l, 897 F.2d 1255, 1262 (3d Cir. 1990).  "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement."  United States v. Garden State Nat'l Bank, 607 F.2d 61, 68 (3d Cir. 1979); see United States v. Lawn Bldrs. of New Eng., Inc., 856 F.2d 388, 392 (1st Cir. 1988) ("Assertions by affidavit of the investigating agent that the requirements are satisfied are sufficient to make the prima facie case." (quotation and citation omitted)).  Nevertheless, even if the United States establishes its prima facie case for enforcement,

"[t]his does not make meaningless the adversary hearing to which the taxpayer is entitled before enforcement is ordered." Powell, 379 U.S. at 58; see Rockwell, 897 F.2d at 1262.  At such hearing, the taxpayer may challenge the summons on any appropriate ground. Powell, 379 U.S. at 58.  "[A]n 'appropriate ground' for challenging the summons exists when the taxpayer disproves one of the four elements of the government's Powell showing, or otherwise demonstrates that enforcement of the summons will result in an abuse of the court's process." Rockwell, 897 F.2d at 1262.

"A lack of possession and control of summoned documents is a 'valid defense' to an IRS application for an enforcement order." United States v. Huckaby, 776 F.2d 564, 567 (5th Cir. 1985).  The taxpayer must produce credible evidence that he does not possess or control the documents sought.  See Lawn Bldrs., 856 F.2d at 392.  The taxpayer cannot merely assert a lack of possession. Huckaby, 776 F.2d at 568 (noting Huckaby had burden of "producing relevant and reliable evidence that he was not in possession or control of the summoned documents in order to sustain his affirmative defense to enforcement of the summons," and did not meet burden by merely stating he did not possess them).  The IRS is not required to prove by positive evidence the existence of the documents sought or their possession by the taxpayer.  Lawn Bldrs., 856 F.2d at 392; see United States v. Wheaton, 791

5

F.Supp. 103, 105 (D.N.J. 1992) (stating party resisting enforcement of summons bears burden of producing credible evidence that he does not possess or control documents sought).

**B.   Attorney-Client Privilege and 26 U.S.C. § 7525**

**1.   Attorney-Client Privilege**

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see also Koch Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 117 (D.N.J. 2002). The attorney-client privilege protects communications between attorneys and clients from compelled disclosure and applies to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.), 493 F.3d 345, 359 (3d Cir. 2007). This privilege protects both the giving of legal advice by the attorney, and the giving of information by the client to the attorney for the purpose of receiving legal advice. See Upjohn Co., 449 U.S. at 390. The attorney-client privilege should be narrowly construed. Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414, 1423 (3d Cir. 1991). The party

6

asserting the privilege must demonstrate that it applies.  <u>See</u> <u>United States v. Furst</u>, 886 F.2d 558, 576 (3d Cir. 1989).

There is an exception to the attorney-client privilege where a client uses legal advice to promote crime or fraud.  <u>United States v. Doe</u>, 429 F.3d 450, 454 (3d Cir. 2005).  The crime-fraud exception applies "to any communications between an attorney and client that are intended to further a continuing or future crime or tort."  <u>Id.</u> (quotation and citation omitted).  The party asserting the crime-fraud exception must show that "(1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud."  <u>In re Grand Jury Investigation</u>, 445 F.3d 266, 274 (3d Cir. 2006) (quotation and citation omitted); <u>see also</u> <u>Bumgarner v. Hart</u>, No. 05-3900, 2007 WL 38700, at *3 (D.N.J. Jan. 4, 2007).  To make a prima facie showing, the party asserting the exception must present "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." <u>In re Grand Jury Investigation</u>, 445 F.3d at 274 (quotation and citation omitted); <u>see also</u> <u>Bumgarner</u>, 2007 WL 38700, at *3.  The evidence presented must "give colour to the charge; there must be prima facie evidence that it has some foundation in fact."  <u>In re Grand Jury Investigation</u>, 445 F.3d at 274 (quotation and citation omitted).

## 2.   26 U.S.C. § 7525

Section 7525 states that

[w]ith respect to tax advice, the same common law
protections of confidentiality which apply to a
communication between a taxpayer and an attorney shall
also apply to a communication between a taxpayer and
any federally authorized tax practitioner to the extent
the communication would be considered a privileged
communication if it were between a taxpayer and an
attorney.

26 U.S.C. § 7525(a)(1).  This privilege applies only in

noncriminal tax matters before the IRS or noncriminal tax

proceedings in federal court brought by or against the United

States.  Id. § 7525(a)(2).  The privilege does not cover written

communications concerning promotion of a person's direct or

indirect participation in any tax shelter.  Id. § 7525(b).

Further, Section 7525 does not protect work product, or

"communications between a tax practitioner and a client simply

for the preparation of a tax return."  United States v. KPMG,

LLP, 316 F.Supp.2d 30, 35 (D.D.C. 2004); see also Evergreen

Trading, LLC v. United States, 80 Fed. Cl. 122, 134 (Fed. Cl.

2007).  The scope of the Section 7525 privilege depends on the

scope of the attorney-client privilege, and is no broader than

the attorney-client privilege.  United States v. BDO Seidman, 337

F.3d 802, 810 (7th Cir. 2003); see also United States v. KPMG,

LLP, 237 F.Supp.2d 35, 39 (D.D.C. 2002).  Thus, the crime-fraud

exception also applies to the Section 7525 privilege.  See BDO

Seidman, 337 F.3d at 810; see also United States v. Arthur

Andersen, L.L.P., 273 F.Supp.2d 955, 960-61 (N.D. Ill. 2003)

(analyzing whether crime-fraud exception abrogated taxpayers'

asserted Section 7525 privilege), amended on reconsideration by

No. 02-6790, 2003 WL 21956404 (N.D. Ill. Aug. 15, 2003).

## II.  Legal Standards Applied Here

### A.   Enforcement of the IRS Summons

The United States satisfied its Powell burden by submitting

a declaration by Richard Schloemer ("Schloemer"), the IRS agent

assigned to the TTH investigation, which stated, inter alia, that

(1) the examination will determine TTH's correct federal income

tax liability for the taxable year ending December 31, 2000, (2)

"[t]he internal revenue summons seeks relevant information which

may shed light on the taxpayer's correct tax liability for the

tax year ending December 31, 2000," (3) "[t]he corporate books,

papers, records, data and testimony sought by the summons are not

already in the possession of the [IRS]," and (4) "[a]ll

administrative procedural steps" required by the Internal Revenue

Code have been followed.  (Decl. Richard Schloemer at ¶¶ 2, 5,

11, 13, 16.)[2]  Additionally, because "no 'Justice Department

referral' is in effect with respect to the taxpayer," the summons

is presumptively valid.  (Id. at ¶ 6.)  See Garden State Nat'l

---

[2]  Schloemer acknowledges that the IRS possesses the
documents listed on exhibit B to his declaration.  (Decl. Richard
Schloemer at ¶ 13.)  Trenk previously produced those documents in
response to the summons.  (Id.)  The United States seeks to
enforce the summons except for the documents listed on exhibit B.

Bank, 607 F.2d at 70 (stating that if the investigating agent has
not recommended prosecution to his superiors a summons is
presumptively valid).  Schloemer's declaration addresses and
satisfies the Powell elements.  Thus, the United States has
established a prima facie case for enforcement of the summons.

Trenk asserts that he does not have possession, custody, or
control of any requested documents that have not already been
produced to the IRS or withheld under a claim of privilege.
(Dkt. entry no. 6, Answer at 5.)  Trenk submitted his own
affidavit in support of his opposition.  (Dkt. entry no. 8, Decl.
Steven Trenk.)  At the evidentiary hearing, Trenk presented
evidence that he does not have possession, custody, or control of
any of the requested documents.  Specifically, Trenk presented
testimonial evidence from Mark Raab ("Raab"), Alvin Trenk, and
himself demonstrating that he does not have the requested
documents.  (See dkt. entry no. 56, 3-27-07 Hr'g Tr.; dkt. entry
no. 58, 4-23-07 Hr'g Tr.)  The Court finds that Trenk has
satisfied his burden of showing that he lacks possession,
custody, or control of the requested documents.  Thus, the Court
will not enforce the summons to the extent it seeks production of
documents other than those withheld under the claim of privilege.

Raab testified that he was the bookkeeper for TTH and
Techtron, Inc., and currently is the accountant for Gold Crown.
(3-27-07 Hr'g Tr. at 4-5.)  Raab was also the sole records

10

custodian for TTH.  (4-23-07 Hr'g Tr. at 81.)  He maintains TTH's files, and all documents and records are stored in one central location, for which Raab is responsible.  (3-27-07 Hr'g Tr. at 26.)  Raab testified that he is the most knowledgeable person regarding the existence of documents or records requested by the summons.  (4-23-07 Hr'g Tr. at 82.)

Raab further testified that he reviewed the summons and searched for the documents requested.  (3-27-07 Hr'g Tr. at 19.)  TTH's files and records are stored in Raab's garage.  (Id. at 98, 112; 4-23-07 Hr'g Tr. at 30-33.)  Raab looked through all the boxes and file cabinets in his garage for documents requested in the summons.  (4-23-07 Hr'g Tr. at 33-35, 79.)  He also searched his email directory for any emails responsive to summons.  (Id. at 29.)  Further, Raab contacted former TTH employees, Jeanette Thompson and Jackie Van Buren, to ask if they had any documents from TTH.  (Id. at 41, 62-63.)  Neither Jeanette Thompson, nor Jackie Van Buren had any documents or records from TTH.  (Id. at 44, 62-63.)  Raab also contacted two former Arthur Andersen ("AA") employees, Robert Stock and Jose Branco, who were involved in the contested liability transaction, regarding any documents they had retained.  (Id. at 58-59, 69.)  Robert Stock only had a copy of the 2000 TTH tax return, and Jose Branco did not have any documents or records pertaining to TTH or the contested liability transaction.  (Id.)

11

Raab testified that he searched through all of TTH's files and contacted everyone who might have documents responsive to the summons. (Id. at 82.)  Raab has produced all non-privileged documents within his possession, custody, or control. (Id. at 83.)  He does not have any additional requested records or documents in his possession, custody, or control. (Id.)

Alvin Trenk testified that he was the chairman of Techtron, Inc. and currently is the chairman of Gold Crown. (Id. at 90.) Alvin Trenk usually does not keep documents in his office, but he did search his desk and both of his residences for documents requested by the summons. (Id. at 91, 104.)  He does not possess any documents that would be responsive to the summons. (Id. at 90-91, 93-94.)  Alvin Trenk testified that Raab maintains the corporate records, and no one other than Raab would have possession of the requested documents. (Id. at 92, 94.)

Trenk also testified that he was the president of TTH and Techtron, Inc., and currently is the president of Gold Crown. (Id. at 135.)  Trenk searched through all of his records, files, and emails for documents that would be responsive to the summons. (Id. at 140-41, 188.)  Also, Trenk contacted Martin Jacobs, a former TTH shareholder, to learn if he had any documents related to the contested liability transaction. (Id. at 131-32, 139-40, 143.)  Trenk testified that Raab maintains the corporate records and physically stores them in his garage. (Id. at 141.)  Trenk

12

further testified that he is not in possession of any documents requested by the summons that have not already been produced or claimed as privileged, nor does he know of anyone else in possession of such documents.  (<u>Id.</u> at 143-44.)  Based on this evidence, the Court concludes that Trenk lacks possession, custody, or control of the requested documents.  Thus, the Court will not enforce the summons to the extent it seeks production of documents other than those withheld under the claim of privilege. <u>See</u> <u>Huckaby</u>, 776 F.2d at 567 (stating that "lack of possession and control of summoned documents is a 'valid defense' to an IRS application for an enforcement order").

**B.   Documents Claimed as Privileged**

Trenk has identified eleven documents that he claims are protected by either the Section 7525 privilege or the attorney-client privilege.  (Non-docketed entry, 4-20-07 Letter.) Documents A and B are correspondence and invoices from AA to Raab pertaining to tax consulting services regarding the contested liability transaction rendered by AA during 2000. (<u>See</u> <u>id.</u>)[3] Document C is correspondence from AA to Raab enclosing tax returns for Techtron, Inc. and Diatronics, Inc. for the year 2000.  (<u>See</u> <u>id.</u>)  Trenk claims documents A, B, and C are protected by the Section 7525 privilege.  (<u>Id.</u>)

---

[3] The Court will identify the documents at issue using the letter designations used by Trenk's counsel in his April 20, 2007 letter.

Document D is an invoice from Techtron, Inc.'s counsel for services rendered through December 31, 2000 and concerns, <u>inter alia</u>, the promissory note and escrow agreement at issue.  (<u>See</u> <u>id.</u>)  Documents E, F, and K are correspondence between Techtron, Inc.'s counsel and Raab concerning revisions to the promissory note and escrow agreement.  (<u>See</u> <u>id.</u>)  Documents G, H, and I are correspondence between Techtron, Inc.'s counsel and Alvin Trenk, Trenk, and/or Raab concerning the contested liability transaction.  (<u>See</u> <u>id.</u>)  Document J is correspondence between Techtron, Inc.'s counsel and Alvin Trenk regarding Techtron, Inc.'s tax status and corporate restructuring.  (<u>See</u> <u>id.</u>)  Trenk claims that documents D through K are protected by the attorney-client privilege.

The Court concludes that the crime-fraud exception applies to documents A through C and E through K, and therefore these documents are not protected by privilege.  The Court also concludes that the crime-fraud exception applies to document D to the extent of the time entry narratives concerning the promissory note and escrow agreement.  To the extent the time entry narratives pertain to other work performed by counsel on behalf of Techtron, Inc., those entries are protected by the attorney-client privilege.

The IRS is investigating whether TTH correctly reported its federal tax liability for the taxable year ending December 31,

14

2000.  (Decl. Richard Schloemer at ¶ 5.)  The IRS's investigation
has focused on TTH's apparent use of an abusive tax avoidance
scheme.  (Id. at ¶ 7.)  After receiving $5,200,000.00 in taxable
settlement proceeds from a lawsuit, TTH transferred the entire
amount of settlement proceeds to a wholly-owned subsidiary in
exchange for a demand note for that amount from the subsidiary.
(Id.)  TTH then transferred the demand note to an attorney's
trust account.  (Id.)  On its federal income tax return for the
year 2000, TTH reported $5,200,000.00 and deducted $5,200,000.00,
effectively eliminating its taxable income of $5,200,000.00
(Id.)  The IRS has thus made a prima facie showing that TTH
intended to commit a crime or fraud, specifically using an
abusive tax avoidance scheme to avoid paying taxes on the
settlement proceeds.  See In re Grand Jury Investigation, 445
F.3d at 274.

        The documents claimed as privileged contain attorney-client
or accountant-client communications made in furtherance of the
allegedly abusive tax avoidance scheme, including the contested
liability transaction.  (See 4-20-07 Letter.)  The communications
in documents A, B, and C furthered the scheme because they
involved AA's work in setting up the contested liability
transaction and filing the 2000 tax return.  (See id.)  The
communications in documents E, F, and K furthered the scheme
because they involved the preparation of the promissory note and

escrow agreement, which were used to effectuate the contested
liability transaction.  (See id.)  The communications in
documents G, H, I, and J furthered the scheme because they
involved advising TTH as to how to bolster its position regarding
the contested liability transaction and continue to protect the
settlement proceeds from taxation.  (See id.)  The time entry
narratives of document D pertaining to the promissory note and
escrow agreement furthered the scheme because they involved the
preparation of the promissory note and escrow agreement.  (See
id.)  However, the time entry narratives of document D that
concern other services rendered do not further the scheme, and
therefore continue to be protected by the attorney-client
privilege.  See Montgomery County v. Microvote Corp., 175 F.3d
296, 304 (3d Cir. 1999) (recognizing that attorney-client
privilege protects attorney billing records where the records
reveal the nature of the services rendered).  Thus, the IRS has
made a prima facie showing that the attorney-client and/or
accountant-client communications were made in furtherance of an
abusive tax avoidance scheme.  See In re Grand Jury
Investigation, 445 F.3d at 274.

The Court finds that the IRS has shown that the crime-fraud
exception applies to the documents Trenk claimed were protected
by the Section 7525 and attorney-client privileges.  Thus, the

Court will direct Trenk to produce documents A through C and E through K in their entirety, and document D with redactions.

### CONCLUSION

The Court, for the reasons stated *supra*, will (1) grant the petition to enforce the summons to the extent it seeks production of the withheld documents, (2) deny the petition to enforce the summons to the extent it seeks production of any other documents, and (3) order production of the withheld documents. The Court will issue an appropriate order.


                                        s/ Mary L. Cooper
                                  **MARY L. COOPER**
                                  United States District Judge


Dated: February 26, 2009

17